UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER L. CEDENO, Individually and On Behalf of All Others Similarly Situated, | Civ. No.: |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| v. | JURY TRIAL DEMANDED |
| iANTHUS CAPITAL HOLDINGS, INC., GOTHAM GREEN PARTNERS, HADLEY C. FORD, JULIUS JOHN KALCEVICH, and JASON ADLER, | |
| Defendants. | |

Plaintiff Peter L. Cedeno ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, regulatory filings, wire and press releases published by and regarding iAnthus Capital Holdings, Inc. ("iAnthus" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (as defined *infra* at ¶ 18) who purchased or otherwise acquired iAnthus securities between May 14, 2018 and April 6, 2020, both dates inclusive (the "Class Period"),

seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      iAnthus is a holding company and represents that, "[t]hrough its wholly-owned subsidiaries, the Company's principal business activity is to provide Shareholders with diversified exposure to best-in-class licensed cannabis cultivators, processors and dispensaries throughout the United States" by "acquir[ing] and operat[ing] a diversified portfolio of cannabis licenses and investments for Shareholders."  Heavily leveraged, iAnthus has at all relevant times depended upon equity and debt financing to fund its aggressive expansion plans.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants issued a series of statements representing that the Company's business operations, financed through various debt and equity offerings, were expanding throughout the United States, without disclosing to Company shareholders that the Defendants were either unwilling or unable to utilize escrowed funds to make necessary interest payments under certain of iAnthus's debenture agreements.

4.      The truth about the Company's operations and finances came to light on April 6, 2020, when iAnthus announced that it had defaulted on $4.4 million in interest payments to the private equity firm Gotham Green Partners ("GGP") under the parties' Amended Debenture Agreement (as defined *infra* at ¶ 13) on March 31, 2020.

5.      On news of the default, iAnthus's stock price fell $0.29 per share, or nearly 62%, to close at $0.179 per share on April 6, 2020.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  The Company's principal executive offices are located in this Judicial District and the Company conducts substantial business here.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff as set forth in the attached Certification (incorporated herein by reference), acquired iAnthus securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the corrective disclosures regarding the Company's business and operations as alleged herein.

12.     Defendant iAnthus is incorporated in Canada, with its registered office located at Suite 1500, 1055 West Georgia Street, Vancouver, British Columbia, Canada, V6E 4N7, and its principal executive offices at 505 Fifth Avenue, 23rd Floor, New York, NY 10017.  The Company's common shares are listed on the Canadian Stock Exchange under the trading symbol

"IAN," and trade in the United States over-the-counter on the OTCQX, part of the OTC Markets Group, under the trading symbol "ITHUF."

13.     Defendant GGP is a private equity firm that focuses on deploying capital into cannabis and cannabis-related enterprises.  GGP manages a diversified portfolio of investments, investing across the cannabis value chain.  GGP maintains its primary offices at 1437 4th Street, Suite 200, Santa Monica, CA 90401.  GGP entered into a Secured Debenture Purchase Agreement (the "2018 Debenture Agreement") with iAnthus on May 24, 2018, which provided for $40 million in secured debenture financing and a concurrent $10 million equity financing agreement with GGP (the "2018 Debenture").   On September 30, 2019, GGP entered into a non-brokered private placement offering of US$20.0 million 13% secured notes (the "2019 Debenture") under an Amended and Restated Secured Debenture Purchase Agreement between the Company and GGP (the "Amended Debenture Agreement").

14.     Defendant Hadley C. Ford ("Ford") is the co-founder of the Company and has served at all relevant times as the Chief Executive Officer and as a director of iAnthus.  Defendant Ford signed the 2018 Debenture Agreement and the Amended Debenture Agreement on behalf of iAnthus.

15.     Defendant Julius John Kalcevich ("Kalcevich") has served at all relevant times as the Chief Financial Officer of iAnthus.  Defendant Kalcevich signed the 2018 Debenture Agreement on behalf of iAnthus.

16.     Defendant Jason Adler ("Adler") has served at all relevant times as the Managing Partner of GGP.  Defendant Adler signed the 2018 Debenture Agreement and the Amended Debenture Agreement on behalf of GGP.

17.     Defendants Ford, Kalcevich and Adler are sometimes referred to herein collectively as the "Individual Defendants."

18.     The Individual Defendants, iAnthus and GGP are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     iAnthus is a holding company and represents that, "[t]hrough its wholly-owned subsidiaries, the Company's principal business activity is to provide Shareholders with diversified exposure to best-in-class licensed cannabis cultivators, processors and dispensaries throughout the United States" by "acquir[ing] and operat[ing] a diversified portfolio of cannabis licenses and investments for Shareholders."  Heavily leveraged, iAnthus depends upon equity and debt financing to fund its aggressive expansion plans.

20.     In May 2018, the Company entered into the $50 million 2018 Debenture Agreement with GGP.  Among other things, that agreement provided for the withholding and escrow of $5,722,222.22 from the 2018 Debenture proceeds to pay one year's interest on the 2018 Debentures in the event of an iAnthus default.

21.     On September 30, 2019, iAnthus and GGP entered into the Amended Debenture Agreement, which provided an additional $20 million to the Company.  The Amended Debenture Agreement included the provision from the 2018 Debenture Agreement that provided for the withholding and escrow of $5,722,222.22 to pay one year's interest under the Amended Debenture Agreement in the event of an iAnthus default.

### False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on May 14, 2018, when iAnthus issued a press release announcing that it had closed a $40 million secured debenture financing and concurrent $10

million equity financing with GGP, the 2018 Debentures.  The press release stated, in relevant

part, that iAnthus had:

> received a US$50 million investment from Gotham Green Partners ("GGP" or the "Investor"), which management believes to be the largest investment to date by a single investor in a publicly traded U.S. cannabis operating company.
>
> "As an early mover in the space, the iAnthus team has successfully assembled a portfolio of valuable licensed cannabis as sets in attractive states with desirable demographics," said Jason Adler, Managing Member of GGP. "iAnthus' recent acquisitions in New York and Florida, combined with its operations in Massachusetts, provide a compelling growth and investment opportunity. With this infusion of capital, we look forward to working with the management team to source additional strategic opportunities and accelerate the Company's growth profile."
>
> "Jason and the GGP team have demonstrated the ability to help portfolio companies accelerate geographic expansion and operational efficiencies to create meaningful value for investors," said Julius Kalcevich, CFO of iAnthus. "GGP's investment enables iAnthus to recapitalize its balance sheet with long-term exchangeable debt and significantly fund its key operations, particularly in New York and Florida. We look forward to GGP's involvement in these activities in the coming quarters."
>
> Through 2018, the Company plans to allocate the proceeds of this financing in the following manner:
>
> > Repayment of US$20 million one-year note and accrued interest to VCP Bridge LLC;
> >
> > Continued cultivation and dispensary build-outs in New York and Florida markets; and
> >
> > Potential expansion activities consistent with iAnthus' strategic objectives.
>
> The remaining expenditures for completing iAnthus' Massachusetts and Vermont operations will be funded with current cash on hand.
>
> The Company's wholly owned subsidiary iAnthus Capital Management, LLC has issued US$40 million aggregate principal amount of high yield senior secured notes, with a maturity date of three years (the "HY Notes"). The HY Notes have a 13% coupon, which may be paid in cash or in-kind for the first year. The HY Notes are exchangeable into shares of the Company at US$3.08 per share, which amount was reserved by price reservation with the Canadian Securities Exchange. The HY Notes include warrants to purchase, in the aggregate, up to 6,670,372 shares of the Company at US$3.60 per share, which amount was reserved by price reservation

with the Canadian Securities Exchange. Beginning one year from today, iAnthus Capital Management may force the exchange of the HY Notes into common shares if the daily volume weighted average trading price of the Company's common shares is greater than US$5.14 for any 20 consecutive trading days.

The Company has concurrently issued US$10 million aggregate amount of Units, with each Unit comprised of one Class A share of the Company at US$2.57 per share and a warrant to purchase one share of the Company at a price of US$3.86 per share, which amount was reserved by price reservation with the Canadian Securities Exchange.

Net cash proceeds to the Company are approximately US$46 million after the deductions of various fees and structuring costs. Pro forma for the repayment to VCP Bridge LLC, the Company will have a cash balance of approximately US$32 million.

23.     The 2018 Debenture Agreement, executed between iAnthus and GGP in connection with the 2018 Debentures, was filed with the Canadian Securities Administrators ("CSA") on May 24, 2018 and made publicly available on the CSA System for Electronic Document Analysis and Retrieval ("SEDAR"). The 2018 Debenture Agreement provided, inter alia, that at least one year's accrued interest on the 2018 Debentures, US$5,272,222.22, was being withheld and escrowed to protect against iAnthus's inability to make its interest payments under the agreement. The 2018 Debenture Agreement, in pertinent part, provided:

> Interest Escrow. On the Closing Date, the Lenders, the Company and the Issuer shall enter into an escrow agreement (the "**Escrow Agreement**") with Skylaw Professional Corporation (the "**Escrow Agent**") pursuant to which the Escrow Agent will hold back US$5,272,222.22 (the "**Escrowed Interest Payment**") from the Proceeds in an escrow account held by the Escrow Agent (the "**Interest Payment Escrow**") to ensure the timely payment of one (1) year's accrued interest on the Debentures in the event that the Issuer does not have sufficient funds to satisfy such interest obligations in accordance with the Debentures. If the Issuer does not have sufficient funds to satisfy such interest obligations under the Debentures, whether during the first year of the term of the Debentures or thereafter, then the Issuer and the Lenders shall direct the Escrow Agent in writing in accordance with the Escrow Agreement to release the funds from the Interest Payment Escrow to satisfy such interest obligations. The Interest Payment Escrow, or the portion held in trust, shall be fully released by the Escrow Agent, after payment of all fees and other obligations under the Escrow Agreement, in accordance with the Escrow Agreement (a) to the Lenders promptly upon notice to

the Escrow Agent of the occurrence of the Event of Default, (b) to the Issuer as directed by the Issuer and the Lenders if the Issuer has not used the Interest Payment Escrow to satisfy interest on the Debentures for two consecutive financial quarters during the second year of the term of the Debentures, provided that the Issuer has satisfied all interest obligations under the terms of the Debentures and is not in default thereunder, or (c) to the Issuer as directed by the Issuer and the Lenders on the Maturity Date of the Debentures (as defined therein), provided that the Issuer has satisfied all Obligations under the terms of the Debentures and is not in default.

*Id.*, §420 (i) (emphasis in original).

24.     After securing the $50 million in financing from GGP, iAnthus issued a series of announcements portraying the Company's business prospects in a favorable light, including additional debt and equity offerings to fund the Company's planned expansion.  One of the debt offerings was a $35 million private placement with Oasis Investments II Master Fund Ltd. ("Oasis").

25.     On May 2, 2019, the Company issued a press release announcing that it had closed an incremental $25 million private placement of unsecured convertible note units.   The press release stated:

> The Company has issued units consisting of US$25.0 million aggregate principal amount of unsecured convertible notes, maturing on March 15, 2023 (the "Notes") and 1,555,207 warrants ("Warrants") to purchase common shares of the Company ("Common Shares").
>
> The Notes accrue interest at the rate of 8% per annum, payable quarterly, which may, at the Company's option, be paid up to 50% in common shares of the Company ("Common Shares") for two years following closing. The Notes are convertible into an aggregate of 4,222,971 Common Shares at US$5.92 per Common Share. At any time following September 1, 2019, iAnthus may force the conversion of the Notes into Common Shares if the daily volume weighted average trading price of the Common Shares on the OTCQX is greater than US$10.29 for any ten consecutive trading days. Each Warrant entitles the holder thereof to acquire one Common Shares at an exercise price of US$6.43 per Common Share until March 15, 2022.

26.     On September 30, 2019, the Company issued a press release announcing that it had entered into a second financing agreement with GGP and had "completed a non-brokered private

placement offering of . . . US$20.0 million 13% secured notes which are exchangeable into common shares of iAnthus due May 21, 2021 . . . to GothamGreen Partners, LLC." The purchase agreement provided GGP with the right to purchase up to an additional US$66.5 million Notes on the same terms and conditions as the private placement. GGP also waived its right to receive the quarterly cash interest payment, $1,357,777.78, under the 2018 Debenture Agreement and agreed to a "payment in kind" on September 30, 2019, which was accrued and added to the principal amount of the notes under the 2018 agreement.

27.     On October 10, 2019, iAnthus filed a copy of the Amended Debenture Agreement with the CSA on SEDAR. In addition to memorializing the above-referenced terms and conditions, the Amended Debenture Agreement, in pertinent part, provided:

> Interest Escrow. On the Closing Date, the Lenders, the Company and the Issuer shall enter into an escrow agreement (the "Esc row Agreement") with SkyLaw Professional Corporation (the "Escrow Agent") pursuant to which the Escrow Agent will hold back US$5,272,222.22 (the "Escrowed Interest Payments") from the Proceeds in an escrow account held by the Escrow Agent (the "Interest Payment Escrow") to ensure the timely payment of one (1) year's accrued interest on the Debentures in the event that the Issuer does not have sufficient funds to satisfy such interest obligations in accordance with the Debentures. If the Issuer does not have sufficient funds to satisfy such interest obligations under the Debentures, whether during the first year of the term of the Debentures or thereafter, then the Issuer and the Lenders shall direct the Escrow Agent in writing in accordance with the Escrow Agreement to release funds from the Interest Payment Escrow to satisfy such interest obligations. The Interest Payment Escrow, or the portion then held in trust, shall be fully released by the Es crow Agent, after payment of all fees and other obligations under the Escrow Agreement, in accordance with the Escrow Agreement (a) to the Lenders promptly upon notice to the Escrow Agent of the occurrence of an Event of Default, (b) to the Issuer as directed by the Issuer and the Lenders if the Issuer has not used the Interest Payment Escrow to satisfy interest on the Debentures for two consecutive financial quarters during the second year of the term of the Debentures, provided that the Issuer has satisfied all interest obligations under the term s of the Debentures and is not in default thereunder, or (c) to the Issuer as directed by the Issuer and the Lenders on the Maturity Date of the Debentures (as defined therein), provided that the Issuer has satisfied all Obligations under the terms of the Debentures and is not in default. Notwithstanding the preceding sentence and the terms of the Escrow Agreement, the Lenders, the Company and the Issuer may by joint, irrevocable direction direct

that the Escrow Agent release the Interest Payment Escrow to the Company in accordance with the terms of the Escrow Agreement.

*Id.*, § 4.20(i).

28.     Subsequently, the relationship between Oasis and iAnthus soured.  On February 27, 2020, iAnthus issued a press release announcing that it had:

> filed a Statement of Claim (the "Claim") in the Ontario Superior Court of Justice against Oasis Investments II Master Fund Ltd. ("Oasis"). iAnthus filed the Claim in the interests of defending the Company against interference with the Company's financing and business by an unsecured lender who is seeking to better its position at the expense of the Company's shareholders and other stakeholders.
>
> Oasis was issued an unsecured convertible debenture (the "Unsecured Debenture") in the principal amount of US$25 million in connection with the Company's offering of unsecured convertible note units announced March 18, 2019 and May 2, 2019 (the "Offering"). Since closing of the Offering, Oasis has consistently agitated iAnthus with unfounded allegations and self-interested proposals, all with the goal of renegotiating the terms of the Unsecured Debenture. Recently, Oasis has alleged that iAnthu s breached certain debt covenants and that an event of default has occurred. iAnthus vehemently disagrees that there is currently, or has ever been, an event of default and is confident that iAnthus has complied with all covenants under the Unsecured Debenture. While iAnthus believes that Oasis' allegations are entirely unfounded, Oasis' behavior has interfered with iAnthus' ongoing financing activities and the Company's business.
>
> Remedies sought by iAnthus include a declaration that iAnthus is not in breach of its obligations under the Unsecured Debenture (and related purchase agreement), damages, and a court ordered injunction restraining Oasis from making further false or misleading statements about iAnthus and otherwise interfering with iAnthus' contractual relationships.

29.     The press release quoted Defendant Kalcevich as stating:

> After good faith efforts led by iAnthus' management, it is highly regrettable that we have been forced to take this action against Oasis. Unfortunately, Oasis, which has a long history of taking activist measures to better its position through the courts and other means, has decided it would try the same tactics with iAnthu s. We are disappointed with Oasis' attempt to extract value at the expense of our shareholders and other stakeholders, and we will pursue any and all remedies available to us as a result of Oasis' self-interested behavior. We are in active discussions with a variety of financing sources, including significant existing lenders and investors who continue to believe strongly in the prospects of both iAnthus and the broader industry . . . .

30.     On March 16, 2020, iAnthus issued a press release disclosing that Oasis had filed

a Statement of Defence and Counterclaim against the Company.  The press release stated:

> Remedies sought by that of Oasis within the counterclaim include the admission by
> iAnthus that they are in breach of their obligations under the unsecured debentures,
> and a declaration that the company has acted in a manner that is oppressive to Oasis.
> Oasis is also seeking a court order for a payment of funds which covers the
> unsecured convertible debenture, applicable interest, as well as expenses and fees
> in full. iAnthus finds the counterclaim to be without merit.

> The court case is in relation to a March 2019 unsecured convertible debenture, for
> which Oasis Investments subscribed to for $25.0 million. In the time since, iAnthus
> alleges that the lender has repeatedly agitated the company with unfounded
> allegations and self interest proposals as a means of bettering their investment
> within iAnthus.

> The firm has allegedly attempted to renegotiate the terms of the unsecured
> convertible debentures a number of times as a result of the fall out in iAnthus' share
> price over the period. Oasis also alleges that debt covenants have been breached
> and an event of default has occurred, which is believed to be in connection with a
> recent investment by Gotham Green Partners.

31.     The Defendants' Class Period statements concerning the escrowed $5.72 million

set forth in the 2018 Debenture Agreement and the Amended Debenture Agreement, described

above, were materially false and misleading.  Those agreements specifically provided that the

monies were withheld from the proceeds of the 2018 Debentures and/or the 2019 Debentures:

> to ensure the timely payment of one (1) year's accrued interest on the Debentures
> in the event that the Issuer does not have sufficient funds to satisfy such interest
> obligations in accordance with the Debentures.

2018 Debenture Agreement, § 420(i); Amended Debenture Agreement, § 420(i). Moreover, under

those agreements, use of the escrowed funds to avoid default on the interest payments was

mandatory:

> If the Issuer does not have sufficient funds to satisfy such interest obligations under
> the Debentures, whether during the first year of the term of the Debentures or
> thereafter, then the Issuer and the Lenders **shall direct the Escrow Agent** in writing

in accordance with the Escrow Agreement **to release funds from the Interest Payment Escrow to satisfy such interest obligations**.

*Id*. (emphasis added).

32.     However, the escrowed $5.72 million was not used to make the March 31, 2020 payments on the 2018 and 2019 Debentures.  Defendants were either unwilling or, due to the unavailability of the escrowed funds, unable to direct the Escrow Agent to use the escrowed funds to make the March 31, 2020 interest payment to GGP under the Debenture Agreements. Defendants failure to disclose that they had the ability to withhold use of the Interest Payment Escrow under the 2018 Debenture Agreement and/or the Amended Debenture Agreement, or that the Interest Escrow Payment was exhausted, diminished or otherwise unavailable to satisfy iAnthus's March 31, 2020 interest payment obligations, was an omission of material fact that rendered the statements concerning the Interest Payment Escrow in the 2018 Debenture Agreement and the Amended Debenture Agreement materially false and misleading.

33.     If the Interest Payment Escrow was released, exhausted or otherwise unavailable to iAnthus because, under the terms of the Amended Debenture Agreement, the "the Lenders, the Company and the Issuer . . . by joint, irrevocable direction direct[ed] that the Escrow Agent release the Interest Payment Escrow to the Company in accordance with the terms of the Escrow Agreement," Defendants' intentional, or reckless, failure to disclose information concerning release of the funds in the Interest Payment Escrow rendered the earlier statements concerning the availability of the escrowed funds to ensure that iAnthus would not default on the interest payments materially false and misleading.

### The Truth Begins to Emerge

34.     Three weeks after the announcement concerning the filing of the Oasis counterclaim, on April 6, 2020, iAnthus issued a press release announcing that it did not make the

applicable interest payments due on its 13.0% Senior Secured Debentures and 13.0% Unsecured

Convertible Debentures due on March 31, 2020.  The Company stated:

> The decline in the overall public equity cannabis markets, coupled with the extraordinary market conditions that began in Q1 2020 due to the novel coronavirus known as COVID-19 ("COVID-19") pandemic, have negatively impacted the financing markets and have caused liquidity constraints for the Company. Despite its best efforts as of this date, the Company has not been able to secure a further round of financing since December 20, 2019, whether as part of the larger financing plan previously announced on September 30, 2019 or from other sources.

> iAnthus attempted in good faith to negotiate with the holders of the Secured Debentures for temporary relief of interest payments, but the parties were not able to reach a satisfactory agreement. As a result, iAnthus and its subsidiaries did not fund the March 31, 2020 interest payment totaling $4.4 million to the holders of the Secured Debentures and Unsecured Debentures, and the applicable cure period prior to triggering an event of default of the Secured Debentures has lapsed. The Company is currently in default of the obligations to its Secured Debenture holders and the existence of such default triggers a cross-default of the obligation to its Unsecured Debenture holders.
> "It was a difficult decision to not make the interest payment when it was due, but management and the board decided it was in the best interest of the Company and our stakeholders to spend our cash to maintain the inherent value of our business operations," said Hadley Ford, CEO of iAnthus. "We have moved aggressively over the past few months to reduce headcount and overhead spend in addition to other cost savings. Our business has never been stronger, and iAnthus is on track to achieve positive adjusted EBITDA and operational cash flow in 2020 as previously planned."

> Despite the challenging conditions, the Company will continue to pursue expansion opportunities in retail, cultivation and manufacturing, as well as further development of its retail and product brands. Deploying these efforts with a ruthless focus on the customer experience and the patient journey, iAnthus remains committed to its mission to create the most valuable cannabis brands and network of cannabis operations and distribution nationally.

35.   In addition, the Company announced the formation of a special committee to

investigate alleged related party transactions involving Defendant Ford:

> The Board of Directors (the "Board") has formed a Special Committee, comprised of the five independent, non-management directors. The Special Committee was formed to:

1.  investigate any potential conflicts of interest and/or required disclosures with respect to the Company's CEO and certain related parties; and

2.  with a view to the best interests of the Company, explore and consider strategic alternatives available to the Company in light of the prospective liquidity requirements of the Company, the condition of the capital markets affecting companies in the cannabis industry and the rapid change in the state of the economy and capital markets generally caused by COVID-19, including but not limited to:

    2.1  renegotiation of existing financing arrangements and other material contracts, including any amendments, waivers, extensions or similar agreements with the lenders to and/or stakeholders of the Company and/or its subsidiaries that the Special Committee determines are in the best interests of the Company and/or its subsidiaries;

    2.2  managing available sources of capital, including equity investments or debt financing or refinancing and the terms thereof;

    2.3  implementing the operational and financial restructuring of the Company and its subsidiaries and their respective businesses, assets and licensure and other rights; and

    2.4  implementing other potential strategic transactions.

36.  On news of the default, iAnthus's stock price fell $0.29 per share, or nearly 62%, to close at $0.179 per share on April 6, 2020.

37.  As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.  Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired iAnthus securities during the Class Period, seeking to pursue remedies under the Exchange Act (the "Class").

39.  The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and

can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of iAnthus;

- whether the Individual Defendants caused iAnthus to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of iAnthus securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages, and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- iAnthus securities are traded in an efficient market and the Company was covered by multiple analysts;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold iAnthus securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

47. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of iAnthus securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire iAnthus securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, regulatory filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for iAnthus securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about iAnthus's finances and business prospects.

51.     By virtue of their positions at iAnthus, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.

53.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of iAnthus.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to iAnthus's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of iAnthus securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning iAnthus's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired iAnthus securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

54.     During the Class Period, iAnthus securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of iAnthus securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of iAnthus securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of iAnthus securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against Defendants Ford and Kalcevich)**

57.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     During the Class Period, Defendants Ford and Kalcevich participated in the operation and management of iAnthus, and conducted and participated, directly and indirectly, in the conduct of iAnthus's business affairs.  Because of their senior positions, they knew the adverse non-public information about iAnthus's misstatement of income and expenses and false financial statements.

59.     As officers and/or directors of a publicly owned company, Defendants Ford and Kalcevich had a duty to disseminate accurate and truthful information with respect to iAnthus's financial condition and results of operations, and to correct promptly any public statements issued by iAnthus which had become materially false or misleading.

60.     Because of their positions of control and authority as senior officers, Defendants Ford and Kalcevich were able to, and did, control the contents of the various reports, press releases and public filings which iAnthus disseminated in the marketplace during the Class Period concerning iAnthus's results of operations.  Throughout the Class Period, Defendants Ford and Kalcevich exercised their power and authority to cause iAnthus to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of iAnthus within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of iAnthus securities.

61.     Defendants Ford and Kalcevich, therefore, each acted as a controlling person of iAnthus.  By reason of their senior management positions and/or being directors of iAnthus, Defendants Ford and Kalcevich each had the power to direct the actions of, and exercised the same to cause, iAnthus to engage in the unlawful acts and conduct complained of herein.  Defendants Ford and Kalcevich each exercised control over the general operations of iAnthus and possessed

the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 5, 2020                                        Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Gustavo F. Bruckner
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
gfbruckner@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603

Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1. I,                    Peter L. Cedeno                    , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against iAnthus Capital Holdings, Inc. ("iAnthus" or the "Company"). I authorize the filing of a comparable complaint and a motion for appointment as lead plaintiff on my behalf.

3. I did not purchase or acquire iAnthus securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired iAnthus securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in iAnthus securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.


Executed _____4-28-20_____
                (Date)


_____
        (Signature)

_____
Peter L. Cedeno
(Type or Print Name)

**iAnthus Capital Holdings, Inc. (ITHUF)**                                      **Cedeno, Peter L.**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 9/24/2018 | Purchase | 460 | $6.1996 |